IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME MCINTYRE, JR.,           :
       Plaintiff,              :        1:14-cv-1425
                                 :
v.                               :        Hon. John E. Jones III
                                 :
LT. KELLINGER,                   :
       Defendant.              :

## MEMORANDUM AND ORDER

### September 14, 2015

Plaintiff, Jerome McIntyre, Jr. ("Plaintiff"), an inmate currently confined at the State Correctional Institution at Rockview ("SCI-Rockview"), Bellefonte, Pennsylvania, initiated the instant civil rights action pursuant to 42 U.S.C. § 1983, naming Lieutenant Paul Kensinger ("Kensinger"), erroneously identified as Lt. Kellinger, as the sole Defendant. (Doc. 1). He alleges that Kensinger violated his Eighth Amendment right to be free from cruel and unusual punishment when he sexually assaulted him while performing a "pat search." (Doc. 1, pp. 2, 8, ¶¶ 16-18). Presently pending is Defendant's motion (Doc. 12) to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, the motion will be denied. Also before the court is Plaintiff's motion (Doc. 18) for

---

[1] Although Defendant alternatively seeks summary judgment, because the motion was not accompanied by a statement of material facts, as required by the Local Rules of Court, discussion will be limited to the motion to dismiss.

disposition wherein he essentially seeks a status report on the disposition of Defendant's motion to dismiss. That motion will be granted; this Memorandum will serve as the status report requested by Plaintiff.

I.  **STANDARD OF REVIEW**

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

## II.  FACTUAL BACKGROUND

Plaintiff alleges that on or about April 22, 2013, Defendant Kensinger ordered him to submit to a pat search. (Doc. 1, ¶ 14). Plaintiff complied because it "is a routine procedure for Correctional Officers to pat search inmates, to see if the inmate has any contraband, (*i.e.* weapons, drugs, etc.)." (*Id.* at ¶ 15). He describes the incident as follows:

> 16. Defendant [Kensinger] pushed back Plaintiff's coat into his waist, dragged his hands down Plaintiff's ass, gripped Plaintiff's ass, then whispered in a sexual manner, closely in Plaintiff's ear, saying, "You got anything in there?" Meaning was there any contraband in Plaintiff's ass, Defendant [Kensinger] continued to cup Plaintiff's ass, when he asked Plaintiff this question.
>
> 17. Plaintiff flinched, when Defendant [Kensinger] grabbed Plaintiff's ass, Defendant [Kensinger] squeezed Plaintiff's ass as if Plaintiff was a female, Plaintiff turned around and had to control his emotions, not to hit Defendant [Kensinger], for grabbing and squeezing Plaintiff's ass.

> 18. Defendant [Kensinger] gave a little pat on Plaintiff's thighs, and told Plaintiff he was free to leave. Plaintiff asked Defendant [Kensinger], "Why did you grab and squeeze my ass?" Defendant [Kensinger] told Plaintiff "Because I can, and this is proper procedure to conduct a pat search on an inmate."

(*Id*. at ¶¶ 16-18).

Plaintiff filed an administrative grievance on April 22, 2013. (*Id.* at ¶ 22). On May 2, 2013, he received the "pink copy" of the grievance, which was assigned grievance number 457956, and indicated that Captain Eaton would investigate the incident. (*Id.* at ¶ 23). He alleges that "never received Captain Eaton's response and resolution of grievance #457956, **at any time**, during the appeal process, Plaintiff couldn't 'properly' use The Prison Grievance System, to appeal to The Facility Manager, and Final Review with The Department, because Plaintiff was stopped, hinderd [sic], by Captain Eaton, who didn't respond, resolve, and transmit the decision back to Plaintiff, within fifteen (15) working days, as required by DOC Policy, DC-ADM 804. (*Id.* at ¶¶ 26, 30) (emphasis in original).

## III. DISCUSSION

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.

4

*See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Specifically, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894–95 (S.D.N.Y. 1998)). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d. 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir.2010).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Woodford v. Ngo*, 548 U.S. 81, 90–92 (2006). It requires compliance with the prison's "deadlines and other critical procedural rules." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The level of detail necessary in a grievance to comply with the grievance procedures will

5

vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007).

The Pennsylvania Department of Corrections (DOC) "Inmate Grievance System" policy, DC-ADM 804, in effect at the relevant time, permitted an inmate to seek initial review of a grievance by a staff member designated as a grievance officer. (Doc. 13-1, pp. 2, 10). The grievance officer shall provide a written response within fifteen working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System. (*Id.* at 2, 12; DC-ADM 804(2)(A)(1)(a)).

> A grievance dealing with allegations of abuse shall be handled in accordance with Department policy **DC-ADM 001, "Inmate Abuse Allegation Monitoring Process" and/or DC-ADM 008, "Sexual Harassment of or Sexual Contact with Inmates."** This may extend the time for responding to the grievance, but will not alter the inmate's ability to appeal upon his/her receipt of the Initial Review response. When a grievance is related to an allegation of abuse and the grievance is the first notice made by the inmate, the Grievance Coordinator will issue an Extension Notice to the inmate by checking the box "Notice of Investigation". The Initial Review Response will be completed by the assigned Grievance Officer when the results from the Office of Special Investigations and Intelligence are received.

(*Id.* at 2, 12; DC-ADM 804(1)(B)(10)). If dissatisfied with the grievance officer's response, the inmate may pursue an appeal to the superintendent of the facility.

(*Id.* at 3, 22 ). If dissatisfied with the superintendent's response, the inmate has the option to submit a final appeal to the Secretary's Office of Inmate Grievances and Appeals. (*Id.* at 26).

In the matter *sub judice*, Defendant argues that Plaintiff failed to exhaust available administrative remedies in that he only sought initial review of his grievance and did not avail himself of the appeal process. Plaintiff submitted grievance number 457956 on April 28, 2013. (*Id.* at 39). The grievance, which was received and processed on May 1, 2013, was identified as an abuse allegation and referred to the Security Office at SCI-Rockview for further investigation. (*Id.* at 39-40). On May 22, 2013, Plaintiff was notified of the Security Office's investigation. (*Id.* at ¶¶ 23, 40). On May 31, 2013, the grievance was denied in the Initial Review Response as follows: "This inmate was interviewed and the procedures for a proper pat search was [sic] explained. Inmates reference to 'pushed my coat into my waist,['] 'griped [sic] my ass', etc. are his own words describing a pat search. His inference in regard to 'asked me in my ear (closely) you got anything in there', 'I was violated sexually', are this inmate's opinion of the search and do not constitute any violation by the involved staff." (*Id.* at 41). Plaintiff did not appeal the grievance any further.

In an effort to excuse compliance with the exhaustion requirement, Plaintiff

7

argues that he never received notice of the May 31, 2013 Initial Review Response denying his grievance, or any results of the special investigation, which rendered the appeal process unavailable to him. (Doc. 17, pp. 4-7). He argues that Defendant has failed to demonstrate the manner in which the Initial Review Response was transmitted to him. (*Id.* at ¶ 32). He further notes that "DC-ADM 804 is silent on what happens when Plaintiff doesn't receive The Initial Review Response in a time manner for a case dealing with sexual assault," and that "The Initial Review Response/Rejection from The Facility Greviance [sic] Coordinator/Designee must be received by the inmate before any appeal to the Facility Manager can be sought." (*Id.* at ¶¶ 24, 27).

Based on the above, it is clear that the issue of administrative exhaustion is better suited for a motion for summary judgment. Consequently, Defendant's motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion (Doc. 12) to dismiss will be denied. Plaintiff's motion (Doc. 18) for disposition will be granted.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's motion (Doc. 12) to dismiss is **DENIED**.[2]

2. Defendant shall file a responsive pleading or appropriate pretrial motion in the time frame and manner prescribed by the Federal Rules of Civil Procedure.

3. Plaintiff's motion (Doc. 18) for disposition is **GRANTED**.

                                      s/ John E. Jones III
                                      John E. Jones III
                                      United States District Judge

---

[2] As noted *supra*, Defendant's motion for summary judgment was not considered as it was not compliant with the local rules. This in no way precludes Defendant from filing a second motion for summary judgment.